## BACKUN v. UNITED STATES.
### No. 4588.

Circuit Court of Appeals, Fourth Circuit.
June 10, 1940.

636

G. L. Jones, of Asheville, N. C. (George Maislen, of New York City, and George H. Ward and G. L. Jones, Jr., both of Asheville, N. C., on the brief), for appellant.

W. Roy Francis, Asst. U. S. Atty., of Waynesville, N. C. (Theron L. Caudle, U. S. Atty., of Wadesboro, N. C., and William M. Nicholson, Asst. U. S. Atty., of Lincolnton, N. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a conviction and sentence under an indictment charging the appellant Backun and one Zucker with the crime of transporting stolen merchandise of a value in excess of $5,000 in interstate commerce, knowing it to have been stolen, in violation of the National Stolen Property Act, 18 U.S.C.A. § 415. Zucker pleaded guilty and testified for the prosecution. There was evidence to the effect that he was apprehended at a pawnshop in Charlotte, N. C., in possession of a large quantity of silverware, a portion of which was shown to have been stolen a short while before. He testified that he purchased all of the silverware from Backun in New York; that the purchase was partly on credit; that Backun had the silverware concealed in a closet and in the cellar of his residence; that there was no sale for second hand silverware in New York but a good market for it in the South; that Backun knew of Zucker's custom to travel in the South and was told by Zucker that he wished to take the silverware on the road with him; and that Backun sold to him for $1,400 silverware which was shown by other witnesses to be of a much greater value. A part of the silverware was wrapped in a laundry bag which was identified by means of a laundry ticket as having been in the possession of Backun. As bearing upon Backun's knowledge that the stolen silverware was to be transported by Zucker in interstate commerce, the following quotation from the testimony of Zucker is pertinent, viz.:

"Q. And you didn't discuss with him what you were going to do with it? A. He knows I go on the road.

"Q. You didn't discuss with him where you were going? A. I told him I wanted to go on the road with it. He knew that. That is the reason he wanted to sell it to me.

"Mr. Jones: I ask Your Honor to strike that out.

"Q. Did you discuss with him and tell him where you were going? A. Yes sir."

There is no serious controversy as to the evidence being sufficient to show that Backun sold the property to Zucker knowing it to have been stolen. It is contended, however, (1) that there is no evidence that Backun had anything to do with the transportation in interstate commerce, (2) that there is no sufficient evidence that the property shown to have been stolen was of a value of $5,000 or more, and (3) that the laundry ticket identifying the laundry bag in which the silverware was wrapped was improperly admitted in evidence.

On the question raised by the first contention, it is to be noted that the case presented is not that of a mere seller of merchandise, who knows that the buyer intends to put it to an unlawful use, but who cannot be said in anywise to will the unlawful use by the buyer. Cf. United States v. Falcone, 2 Cir., 109 F.2d 579. It is the case of a sale of stolen property by a guilty possessor who knows that the buyer will transport it in interstate commerce in violation of law and who desires to sell it to him for that reason. The stolen property was not salable in New York. Backun knew that Zucker could dispose of it on his visits to the Southern pawnbrokers and would take it with him on his trips to the South. The sale was made at a grossly inadequate price and Zucker was credited for a part even of that. While there was no express contract that Zucker was to carry the property out of the state, Backun knew that he would do so; and, by making the sale to him, caused the transportation in interstate

commerce just as certainly as if that transportation had been a term of the contract of sale. As his will thus contributed to the commission of the felony by Zucker, he would have been guilty at common law as an accessory before the fact to the commission of the felony. 1 R.C.L. 144 et seq.; 16 C.J. 134. His guilt as a principal is fixed by section 332 of the Criminal Code, 18 U.S.C.A. § 550, which provides that one who "aids, abets, counsels, commands, induces, or procures" the commission of an offense is guilty as a principal, as well as by the terms of the Stolen Property Act itself which make it a crime to cause stolen property to be transported in interstate commerce.

Whether one who sells property to another knowing that the buyer intends to use it for the commission of a felony renders himself criminally liable as aiding and abetting in its commission, is a question as to which there is some conflict of authority. See United States v. Falcone, supra. It must be remembered, however, that guilt as accessory before the fact has application only in cases of felony; and since it is elementary that every citizen is under moral obligation to prevent the commission of felony, if possible, and has the legal right to use force to prevent its commission and to arrest the perpetrator without warrant, it is difficult to see why, in selling goods which he knows will make its perpetration possible with knowledge that they are to be used for that purpose, he is not aiding and abetting in its commission within any fair meaning of those terms. Undoubtedly he would be guilty, were he to give to the felon the goods which make the perpetration of the felony possible with knowledge that they would be used for that purpose; and we cannot see that his guilt is purged or his breach of social duty excused because he receives a price for them. In either case, he knowingly aids and assists in the perpetration of the felony.

Guilt as an accessory depends, not on "having a stake" in the outcome of crime, as suggested in the Falcone case, supra, but on aiding and assisting the perpetrators; and those who make a profit by furnishing to criminals, whether by sale or otherwise, the means to carry on their nefarious undertakings aid them just as truly as if they were actual partners with them, having a stake in the fruits of their enterprise. To say that the sale of goods is a normally lawful transaction is beside the point. The seller may not ignore the purpose for which the purchase is made if he is advised of that purpose, or wash his hands of the aid that he has given the perpetrator of a felony by the plea that he has merely made a sale of merchandise. One who sells a gun to another knowing that he is buying it to commit a murder, would hardly escape conviction as an accessory to the murder by showing that he received full price for the gun; and no difference in principle can be drawn between such a case and any other case of a seller who knows that the purchaser intends to use the goods which he is purchasing in the commission of felony. In any such case, not only does the act of the seller assist in the commission of the felony, but his will assents to its commission, since he could refuse to give the assistance by refusing to make the sale. This is the view taken of the matter in a number of well considered cases in the federal courts. Pattis v. United States, 9 Cir., 17 F.2d 562; Vukich v. United States, 9 Cir., 28 F.2d 666, 669; Borgia v. United States, 9 Cir., 78 F.2d 550, 555; Anstess v. United States, 7 Cir., 22 F.2d 594; Hubinger v. United States, 7 Cir., 64 F.2d 772; Rudner v. United States, 6 Cir., 281 F. 516, 519. It is in harmony with the well settled rule that one who, with knowledge of the existence of a conspiracy, aids in carrying out its unlawful design makes himself a party thereto. Simpson v. United States, 4 Cir., 11 F.2d 591.

A case very much in point is Anstess v. United States, 7 Cir., 22 F.2d 594, 595. In that case it was held that one who sells contraband whiskey to another with knowledge that the purchaser intends to transport it unlawfully participates in the purchaser's plan to transport. The court said: "If one, having possession of contraband goods, knowing that another desires to purchase those goods for the purpose of unlawfully transporting them, sells them to that person, he furnishes him the means for committing the crime. One who, with full knowledge of the purpose with which contraband goods are to be used, furnishes those goods to another to so use them, actively participates in the scheme or plan to so use them."

Other well considered cases sustain the same conclusion. In Cook v. Stockwell, 113 L.T.R. 246, it was held that one who sold liquor knowing that the buyer in-

tended to re-sell it in violation of law was guilty of aiding and abetting in the subsequent illegal resale. In Ginsberg v. United States, 5 Cir., 96 F.2d 433, it was held that one who rented his apartment to others for the purpose of storing narcotics for sale was guilty with them of the unlawful sales made therefrom. Likewise it was held in Rosencranz v. United States, 9 Cir., 155 F. 38, that one who knowingly rents property to another to be used as a bawdy house is guilty of aiding and abetting the keeping of a bawdy house. In Schrader v. United States, 8 Cir., 94 F.2d 926, 927, it was held that the proprietor of a bawdy house who offered employment to a girl knowing she was from another state was guilty of transportation under the Mann Act, 18 U.S.C.A. § 397 et seq., although such proprietor had no part in the transportation. The court said in that case: "Responsibility for crime is not limited under the federal statute to those who do the overt acts. It extends to all who knowingly and willfully take a hand in it within the act defining a principal." In Di Bonaventura v. United States, 4 Cir., 15 F.2d 494, it was said that for a landlord to permit premises which he had rented to be used for the unlawful manufacture of liquor might render him guilty of aiding and abetting in the commission of the crime. And in State v. Scott, 80 Conn. 317, 68 A. 258, 261, it was held that one who installed a ticker to be used in illegal gambling was guilty of violating the statute which forbade the keeping of a gambling place. In the case last cited, the court used the following language, which we think sound: "The tradesman who knowingly furnishes implements to a burglar for the purpose of aiding him in a particular burglary cannot escape the penalty of assisting in that crime because he is engaged in selling thousands of the same implements for honest and useful purposes. * * * When he wrongfully supplies his implements to a known criminal for the purpose and with the intent that they shall be used as a means in the accomplishment of a particular offence, he may by such conduct become a party to that offence."

■ But even if the view be taken that aiding and abetting is not to be predicated of an ordinary sale made with knowledge that the purchaser intends to use the goods purchased in the commission of felony, we think that the circumstances relied on by the government here are sufficient to establish the guilt of Backun. The sale here was not of a mere instrumentality to be used in the commission of felony, but of the very goods which were to be feloniously transported. Backun knew not only that the commission of felony was contemplated by Zucker with respect to such goods, but also that the felony could not be committed by Zucker unless the sale were made to him. The sale thus made possible the commission of the felony by Zucker; and, if Zucker is to be believed, the commission of the felony was one of the purposes which Backun had in mind in making the sale. After testifying that he had told Backun that he wished to go on the road with the silverware (i. e. transport it in interstate commerce), he says "He (Backun) knew that. That is the reason he wanted to sell it to me." There can be no question, therefore, but that the evidence sustains the view that the felony committed by Zucker flowed from the will of Backun as well as from his own will, and that Backun aided its commission by making the sale. There was thus evidence of direct participation of Backun in the criminal purpose of Zucker; and whatever view be taken as to the case of a mere sale, certainly such evidence is sufficient to establish guilt, cf. United States v. Pandolfi, 2 Cir., 110 F.2d 736, distinguishing United States v. Falcone, supra.

■ Coming to the second question, we do not think that the stolen property transported in interstate commerce was sufficiently shown to be of a value of $5,000 or more. Not all of the property found in possession of Zucker and acquired by him from Backun was shown to be stolen property. This was established only as to such part of it as was identified by the witnesses Jeffries, McCracken, McPherson, Shelhorse, Coleman and Kibler; and these witnesses fixed the value of the property which they identified at considerably less than $5,000.

It is true that the witness Littlejohn valued the entire lot of silver in possession of Zucker at $10,000 and a portion identified by persons in Charlotte at $6,000 or $7,000; but there was no evidence to show that any part of the silver was stolen except that identified by the witnesses on the trial and there was no evidence that the silver identified in Charlotte did not embrace silver in addition to that identified by these witnesses. On the contrary,

there was evidence that a Mrs. Dewar and a Mrs. Ragland, who did not testify at the trial, came to Charlotte and identified certain silver, the value of which was not shown, and which was not shown to have been stolen from them. Furthermore, Littlejohn was not shown to have had any knowledge of the value of silverware except such as he gained from observing price tickets on articles in show windows, conversing with insurance adjusters and owners, having silversmiths examine the property seized by him and observing the valuations placed upon it by appraisers. His general statement as to value, under such circumstances, was not of a sufficiently substantial character to take the case to the jury as involving the statutory amount, in the face of the specific lower valuations placed upon the stolen articles by their owners.

■ Congress has seen fit to limit criminal responsibility under the statute to cases where the stolen property transported in interstate commerce is of a value of $5,000 or more; and, to sustain a conviction under it, there must be substantial evidence that the stolen property transported was of such value. Where the value is less, the prosecution for possessing or dealing with stolen property must be had in the state courts and under·state law.

■ As the case must go back for a new trial, where the value of the stolen property may be established as within the statutory limit, we feel that we should pass upon the third point relating to the admissibility of the laundry ticket identifying the laundry bag in which some of the stolen silverware was wrapped. We think this evidence admissible. The fact that the laundry ticket was issued in the ordinary course of business and that it bore a number corresponding to that on the bag, which under the method of business of the laundry indicated that the bag was delivered to Backun, was a circumstance of probative value for the consideration of the jury. It is not condemned by the hearsay rule but falls clearly within the principles under which exceptions to the hearsay rule are admitted, i. e. necessity and circumstantial guaranty of trustworthiness. Wigmore on Evidence, 2d Ed. vol. 3, § 1420 et seq.; United States v. Wescoat, 4 Cir., 49 F.2d 193, 195; Heike v. United States, 2 Cir., 192 F. 83; and see cases cited in 3 Wigmore, 2d Ed., p. 281.

For the reasons stated, the judgment appealed from must be reversed and the case remanded for a new trial. It may be that, upon such new trial, it will be possible to identify additional silver in the possession of Zucker as having been stolen, or to show otherwise that the value of the stolen silver transported in interstate commerce came within the valuation fixed by the statute. If not, the State of New York will doubtless take cognizance of the violation of its laws disclosed by the record. But upon the showing as to value appearing in the record now before us, we feel that we would not be justified in permitting the conviction under the federal statute to stand.

Reversed.

SOPER, Circuit Judge, concurs in the result.