## DRIVER v. UNITED STATES.
### No. 14233.

United States Court of Appeals
Fifth Circuit.
Nov. 22, 1952.

E. C. Boswell, Geneva, Ala., for appellant.

William S. Walker, and Edith House, Asst. U. S. Attys., Jacksonville, Fla., for appellee.

Before BORAH, STRUM, and RIVES, Circuit Judges.

STRUM, Circuit Judge.

Appellant was convicted of having made and used a false document in a matter within the jurisdiction of the Bureau of Internal Revenue, knowing the same to contain false statements, in violation of 18 U.S.C.A. § 1001. The trial was before a district judge, a jury having been waived. On appeal, the sole question is the sufficiency of the evidence to connect appellant with the "making and use" of the false document.

There is evidence from which it could be reasonably found that appellant's co-defendant below, one Middleton, proposed to appellant Driver that a spurious income tax return be filed in Driver's name for the year 1950, which would show that sums withheld from Driver's salary by an employer overpaid his tax liability by $104.68, thus entitling Driver to a refund in that amount. Accordingly, a return falsely showing these facts was prepared by Middleton in appellant's name and submitted to the Collector of Internal Revenue at Jacksonville, who approved the claim for refund and mailed appellant a check for the sum claimed as overpaid. Both the employer and the sums allegedly withheld were entirely fictitious. Appellant and Middleton were fellow inmates of the Florida state prison at all times here involved.

Appellant received the refund check, endorsed it, and deposited it to his account in the prison bank, which theretofore stood at zero. Shortly thereafter appellant drew against it checks aggregating $10.00, apparently for his own use, and two checks aggregating $40.00, the proceeds of which were transmitted through another prisoner to Middleton as his share of the proceeds of the fraud. While not seriously disputing these facts, appellant insists that they do not prove that he participated in the "making or use" of the false statement, which is the gravamen of the offense, but only that he received the proceeds.

It is clear that Middleton master-minded the project, and that he prepared and submitted the false return in appellant's name, as one of a series of false returns prepared by Middleton along the same general lines at about the same time. In an effort to exonerate appellant, Middleton testified that he did not discuss the matter with appellant, nor advise appellant of his plans, until after he, Middleton, had prepared and mailed the false statement. But this does not square with appellant's own testimony that he talked with Middleton about the plan "around Christmas," 1950, and again in the early part of January, 1951. The return was not received by the Collector until January 15, 1951, well after these two conversations. There is ample testimony to support the trial judge's findings that appellant was aware of the plan, was a willing party to it, and knowingly acquiesced in the use of his name in furtherance of it. Appellant's ready acceptance of the refund check, and his prompt division of the proceeds with Middleton, strongly corroborate this conclusion.

Of course, appellant also denied that he authorized Middleton to submit the return in appellant's name, claiming that he in fact told him not to do so. But the district judge, weighing this denial against the many countervailing circumstances in the evidence, was not convinced. It was reasonable for the trial judge to conclude from all the circumstances, as he did, that since Middleton's only object was to get money for himself, and since the refund would be sent to appellant who would have

complete control over its disposition, Middleton would not have submitted the return in appellant's name without first securing his authority to use his name, and an agreement as to the division of the spoils, which would constitute appellant an aider and abettor in the use of the false return. It is contended for appellant that he accepted the proceeds and divided with Middleton because he stood in fear of Middleton and agreed only through coercion. This contention is refuted by appellant's own testimony that he was "never afraid of Clarence Middleton."

On the whole, the conclusion of the trial judge that the false return was "made and used" for the purpose stated with appellant's knowledge, consent and co-operation, thus constituting him an aider and abettor, is supported by the evidence. Compare McCoy v. U. S., 9 Cir., 169 F.2d 776, certiorari denied 335 U.S. 898, 69 S.Ct. 298, 93 L.Ed. 433; Backun v. U. S., 4 Cir., 112 F.2d 635.

Affirmed.