Elmer Samuel **CHAPMAN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18685.

United States Court of Appeals Fifth Circuit.

April 18, 1961.

Rehearing Denied June 8, 1961.

**540**

Joseph H. Davis, Macon, Ga., for appellant.

Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

A one-count information charged Chapman and one Emmett Bolton Mercer with unlawfully, knowingly and willfully possessing 9,540 pounds of sugar intended for use in violating the provisions of the Internal Revenue Code. Specifically, the information charged that Chapman and Mercer possessed 9,540 pounds of sugar with the intent to use the same in the nontaxpaid distilled spirits business in violation of 26 U.S.C. §§ 5686(a), 7302.[1] After a severance, Mercer

---

[1] "§ 5686. *Penalty for having, possessing, or using liquor or property intended to be used in violating provisions of this chapter*

"(a) *General.*—It shall be unlawful to have or possess any liquor or property intended for use in violating any provision of this chapter or regulations issued pursuant thereto, or which has been so used, and every person so having or possessing or using such liquor or property, shall be fined not more than $5,000, or imprisoned not more than 1 year, or both."

"§ 7302. *Property used in violation of internal revenue laws*

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed

pleaded guilty and Chapman was found guilty by a jury. Chapman was sentenced to imprisonment for one year.

On appeal, Chapman's main insistence is that the district court erred in overruling his motion to suppress on the ground that the sugar was seized against his will, without a search warrant, and not as incident to any lawful arrest.

On the afternoon of July 20, 1960, Donald Durden, a school-age boy who worked part time at the Colonial Grocery Store in Milledgeville, Georgia, walked into the office of Mr. William W. Williams, a federal Alcohol and Tobacco Tax investigator in Macon, Georgia. Donald informed Mr. Williams that for the past six weeks a man from Macon had been buying large amounts of sugar from the Colonial Store, and that he understood that the man lived across the street from Chief of Police of Macon. Mr. Williams showed Donald a picture of Chapman, who lived at such a location and had a record[2] and reputation for dealing in illicit whiskey, and Donald identified Chapman as the one who had been buying the sugar. According to Donald, the next load of sugar was to be hauled out on the following evening at between six and six-thirty o'clock.

Williams had not previousy known his informer, Donald Durden, and had no immediate means of ascertaining what reliability could be placed on his information. Though there was time to obtain a warrant of arrest or a warrant for the search and seizure of the sugar, Williams made no effort to get any warrant. Instead, on the following evening, July 21, Williams and other agents secreted themselves where they could watch the truck being loaded with bags of sugar from the loading platform of the Colonial Store.

The sugar was covered with a tarpaulin, and the truck driven off by Chapman. The agents followed. In a short distance they saw the truck stop and pick up Mercer. Mercer also had a record and reputation for dealing in illicit liquors, with which the agents were familiar. The agents continued to follow the truck along the public highways from Milledgeville, Georgia, to five miles north of Cochran, Georgia, at the intersection of a county paved road with the state highway. At that time Chapman got out of the truck and entered a Ford automobile parked by the side of the highway in which a woman and a ten or twelve year-old boy were waiting. The truck turned left and continued on with Mercer driving. The agents then placed Chapman under arrest, overtook the truck a short distance further on, arrested Mercer, and seized the sugar.

The district court briefly stated its reasons for overruling the motion to suppress:

"I'm going to have to overrule the motion in view of the quantity of sugar, the information that he had been making the same trips each Thursday for several weeks before, the record and reputation of both men, I believe, I think a misdemeanor was being committed in his presence."

The offense for which the arrests were made is a misdemeanor. (See footnote 1, supra.) Authority to make the arrests and to seize the sugar stems from 26 U.S.C. § 7608.[3]

under such laws, or which has been so used, and no property rights shall exist in any such property. * * *"

2. See Chapman v. United States, 5 Cir., 1959, 272 F.2d 70, reversed in Chapman v. United States, 81 S.Ct. 776.

3. "§ 7608. *Authority of internal revenue enforcement officers*
"Any investigator, agent, or other internal revenue officer by whatever term designated, whom the Secretary or his delegate charges with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of subtitle E or of any other law of the United States pertaining to the commodities subject to tax under such subtitle for the enforcement of which the Secretary or his delegate is responsible, may—

■ Chapman's possession of the sugar was in the actual presence of the officers. We agree with the district court that the information which the officers had justified their belief that the sugar was intended for use in violating the provisions of the internal revenue laws. The arrest and seizure were legal, and the motion to suppress was properly overruled.

After his arrest, Chapman voluntarily gave the officers a statement in which he denied knowing that there was any sugar on the truck. The officers testified to seeing him help load the sugar. Mercer turned state's evidence, and testified that he was employed by Chapman to carry the sugar to a place in Florida where it would be swapped for a load of nontaxpaid liquor, and to bring that liquor back; that that was the procedure followed on previous trips; that Chapman in another automobile usually either followed the truck or led the truck; that Chapman paid him $35.-00 a trip plus expenses, or $20.00 to $25.00 if he did not bring whiskey back.

■ The statutes, 26 U.S.C. § 5686 (a) and § 7302, are broad enough to cover an intended use of the sugar for the purpose of obtaining nontaxpaid whiskey, and it is not essential to go further and prove that the sugar was ultimately intended for use at an illicit distillery, though the latter purpose could also be fairly inferred. As said by the Fourth Circuit in De Hart v. United States, 4 Cir., 1956, 237 F.2d 227, 228:

"No evidence was offered in explanation of the purchase and possession of so large a quantity of sugar by a man not engaged in the mercantile business and the conclu- sion is inescapable that he was hauling it into the territory where bootleg whiskey was being made for use in that unlawful business. It would, of course, be no defense that he intended to sell it to illicit distillers instead of to use it himself in illicit distilling, Backun v. United States, 4 Cir., 112 F.2d 635, 637; and the circumstances clearly indicate that he knew that it was intended for this unlawful use. To hold otherwise would be to close our eyes to facts, which are susceptible of no other reasonable explanation and to stultify the administration of justice in the view of all right thinking men."

The district court properly denied Chapman's motion for a judgment of acquittal.

■ There was, of course, no error in overruling the defendant's objections to Mercer's testimony that he and Chapman swapped the sugar hauled to Florida for nontaxpaid liquor. That went to the defendant's intent, the very gist of the offense. The defendant cannot complain that it also tended to prove him guilty of other offenses.

■ Defendant's counsel objected to the statement of the United States Attorney in argument to the jury that "we've caught a big one now." The district court responded: "Well, I take it that he's just talking about that being the inference from the testimony in the case, the quantity of the sugar and the length of the trip and so forth. On that basis—it's just argument." Certainly there was no reversible error in that ruling.

In the course of cross-examination of the witness Mercer, Chapman's counsel

"(1) carry firearms;
"(2) execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under authority of the United States;
"(3) in respect to the performance of such duty, make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable ground to believe that the person to be arrested has committed, or is committing, such felony; and
"(4) in respect to the performance of such duty, make seizures of property subject to forfeiture to the United States."

asked: "Q. Aren't you charged with stealing some fans from the church? A. Well, they say I done it." The United States Attorney objected because no conviction had been proved and the following colloquy further ensued:

"Mr. Buford: And another thing I want to make an objection on, if it's not out of order. I don't know where Mr. Davis got that information. If it's true I have no real objection to the jury knowing about it, but this is Mr. Davis' client, you know. He is pleading in this court and we are using him as a witness.

"Mr. Davis: I'll state in my place, Your Honor, that I am not violating any confidential attorney-client relationship."

Later, upon oral argument of the United States Attorney, the following occurred:

"Mr. Buford: I might make this comment. They didn't have too much to say about Mr. Mercer in their argument to the jury. Once or twice they mentioned him. Of course I'm sure you were here in court. They were counsel for Mr. Mercer, they entered a plea of guilty for Mr. Mercer, and we elected to call him as a witness in this case, and we questioned Mr. Mercer about what he knew about it and he very frankly admitted that he was guilty of the charge and told you just what he knew about it, answered the questions very frankly. So it wasn't a question of us bringing somebody in here that they hadn't ever seen before, that they hadn't ever talked to before, because—

"Mr. Davis: May it please the Court, I apologize for interrupting, but I want to move for a mistrial at this stage because he has injected into this case the fact that counsel for Chapman, representing the joint defendant Mercer, entered a plea of guilty for him. It is not in evidence. Whether or not these jurors were in the court at the time it hap-

pened, I do not know, but it is extremely prejudicial.

"The Court: Well, I shall charge the jury on that. Members of the Jury, in determining the guilt of the defendant on trial the question of what plea was entered by the other defendant has no bearing, and shall not be considered by you. It may be considered in passing upon the credibility of the witness Mercer himself."

■ The United States Attorney should not have argued that Chapman's counsel had also represented Mercer. In view, however, of what had occurred on the cross-examination of Mercer, of the court's charge to the jury, and of the overwhelming evidence of Chapman's guilt, we think that this was an error which did not affect Chapman's substantial rights, and that it should therefore be disregarded. See Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A.

■ Defendant's counsel objected to that part of the court's oral charge to the jury in which it posed the question: "Did this defendant possess that quantity of sugar and, if so, did he possess it with the intent to use the same in the non-tax-paid distilled spirits business?"

The grounds of objection were thus stated:

" * * * on the ground that such is somewhat vague, somewhat broad, does not tie in any particular statutory violation with the sugar in question and does not restrict it to the so-called manufacturing end of the illicit whiskey business insofar as raw materials are concerned, that the defendant contends that this is a violation brought under the so-called raw materials statute and that the law applicable to that, possessing material for use in the manufacture of non-tax-paid whiskey, would be appropriate and necessary."

The information charged in broad language that the sugar was possessed "with the intent to use the same in

544

the non-tax-paid distilled spirits business; all in violation of 26 U.S.C. 5686 (a), 7302." The statutes are not so narrowly drawn as to require an intent to use the sugar in the manufacture of distilled spirits. We find no error in the court's charge.

■ Finally, appellant urges that in the event of an affirmance the case should be remanded with instruction to correct the sentence so as to reflect that it is concurrent with rather than consecutive to another sentence of Chapman. The written sentence is for a period of

"Twelve (12) months, or until he is otherwise discharged as provided by law; service of said sentence shall not run concurrently with the sentence heretofore imposed in Criminal No. 7542, Macon Division, but shall be in addition to and independent thereof * * *."

Appellant insists that that is at variance with the sentence imposed in open court and relies on Payne v. Madigan, 9 Cir., 1960, 274 F.2d 702, 704.

After considerable colloquy in passing sentence on Chapman in open court, the following occurred:

"The Court: All right, sir. I'll let Mr. Chapman serve twelve months.

"Mr. Buford: If Your Honor please, wait just a minute. Is this twelve months sentence you have imposed on Mr. Chapman, is that independent of the sentence that is now pending in the Supreme Court?

"The Court: Certainly.

"Mr. Davis: Effective as of now? The sentence that is being imposed now?

"The Court: Yes."

Of course, the sentence was imposed "now" and was "effective as of now" even though "independent of" the other sentence. If there was any ambiguity it was properly removed by the written

sentence. Payne v. Madigan, supra, 274 F.2d at page 705.

We find no reversible error in the record, and the judgment is

Affirmed.