Irving Joseph LEE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18184.

United States Court of Appeals Eighth Circuit.

July 21, 1966.

Rehearing Denied Aug. 24, 1966.

Bernard J. Mellman, St. Louis, Mo., for appellant. Morris A. Shenker and Bernard J. Mellman, St. Louis, Mo., were on the brief.

Robert J. Koster, Asst. U. S. Atty., St. Louis, Mo., for appellee. Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., was with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

GIBSON, Circuit Judge.

Irving Joseph Lee was charged in an indictment with having, on the 29th day of September, 1964, received and concealed stolen securities having a value of more than $5,000, which were moving as and constituted interstate commerce from the state of Illinois to the state of Missouri and which he knew at the time of receiving and concealing the securities that they were stolen, all in violation of Title 18, U.S.C. § 2315. Following a verdict of guilty by a jury, he received a three-year sentence of imprisonment. A timely appeal was filed by him.

The facts giving rise to the indictment are as follows: The Fairview State Banking Company, Fairview, Illinois, was burglarized sometime between May 2 and May 4, 1964. The vault had been opened and nineteen safety deposit boxes were rifled, and upon examination certain United States Series E Savings Bonds and shares of corporate stock were found to be missing from some of the boxes. On September 18, 1964, the Federal Bureau of Investigation office in St. Louis received information from a confidential source that Lee was offering stolen securities for sale. Upon receipt of this information, the F.B.I. began a

"loose" surveillance of Lee and ascertained where he lived, what kind of automobile he drove, learned that his house was up for sale and that he was an ex-bookmaker. During the following ten days more information was received about Lee from the same confidential source. The F.B.I. was informed that the securities which Lee was attempting to sell had been stolen from the burglarized bank in Illinois, and upon learning on September 28, 1964 that Lee would be in a certain restaurant on 12th Street in St. Louis, Missouri, again placed him under surveillance and found him in the company of another person, but he did not have any package, brief case or any type of folder that could have contained the stolen securities. The evening after that meeting in the restaurant, the F.B.I. received further information from the same confidential source, which had proved reliable in the past on other matters. Acting on this information, Agent Smith of the F.B.I., who for the first time saw Lee in the restaurant, went the next morning by Lee's home and found Lee's automobile there. During the afternoon of September 29, 1964, the F.B.I. received information that Lee was probably going to sell the securities or dispose of them at the St. Louis airport that evening. This was the first information that the F.B.I. had received that Lee would be at some specific place at a designated time with the securities actually in his possession. This information was disclosed to the United States Attorney in the late afternoon of September 29, 1964, but no application was made to the United States Commissioner for the issuance of a warrant for the arrest of Lee. At about 7:00 p. m. that same evening nine Special Agents of the F.B.I. proceeded to the airport in St. Louis, Missouri, and stationed themselves at various places inside and outside the airport building. At about 9:30 that evening Lee entered the airport lobby, carrying a tan leather brief case. He sat in a lounge chair for about five minutes, walked to a stairway, descended to a lower level and headed toward the east concourse, which contains rooms for departing and deplaning air passengers. At this point Agent Smith touched Lee on the shoulder, identified himself as an F.B.I. Agent, and asked Lee for identification. Lee responded he was "Irv Lee" and produced his credentials. Lee was then asked what he had in the brief case and he replied that he did not know. Agent Smith then placed Lee under arrest, took the brief case from him, handed it to Agent Morley, who opened the unlocked brief case, and briefly glanced at its contents. The agents escorted Lee to the First Aid room at the airport, where he was again informed that he was under arrest. The brief case was again opened and contained therein was found a number of United States Series E Savings Bonds and other securities, which had been in the safety deposit boxes in the Fairview Bank prior to the burglary. The face value of these securities was approximately $100,000.00. Lee was also searched and on his person were found a key to the brief case, a brown paper bag, and a white envelope on which was written "F 71", "R 849", "gate" and "Lee". After this search Lee was taken to the F.B.I. office. All of these exhibits, the brief case, the key, the envelope, the paper bag, and the bonds and securities contained in said brief case were introduced and admitted into evidence over the objection of Lee.

Evidence was also introduced that Transworld Air Flight 71, which originated in New York, was scheduled to arrive on September 29, 1964 at 8:49 p. m. but did not arrive until 9:58 p. m. It departed for Tulsa, Oklahoma, at 10:35 p. m. on the next leg of its flight.

Prior to trial, Lee filed a motion to suppress the evidence obtained as a result of the search made of his person on September 29, 1964, on the basis that said search and arrest were made without warrant; that if probable cause existed for the arrest of Lee, the Government had ample time to obtain a warrant; and that the subsequent arrest and search were violative of Lee's rights under the Fourth and Fifth Amendments to the United States Constitution. This

motion was overruled by the trial court, which ruling Lee claims to be in error.

Lee also contends the Court erred in instructing the jury that it would be justified if it found that Lee was in possession of recently stolen property in inferring that Lee had knowledge that the property was stolen unless such possession was explained to the satisfaction of the jury, contending that such instruction improperly shifted the burden of proof and improperly required such explanation of possession to be proved to the satisfaction of the jury.

The third and last error asserted by Lee is the Court's failure to sustain Lee's motion for judgment of acquittal for the reason that the evidence was insufficient to justify a conviction and did not show that the stolen property was moving as and constituted interstate commerce, from the state of Illinois to the state of Missouri.

We affirm the conviction.

## I.

■■■ The motion to suppress was properly overruled. F.B.I. Agent Smith had probable cause to arrest Lee as he had reasonable grounds to believe that Lee was committing a felony in his presence when he observed Lee at the time and place indicated by the previously reliable informant. The Agent certainly had facts and circumstances within his knowledge, and reasonable trustworthy information sufficient to warrant a man of reasonable caution to believe that an offense was being committed. Lee does not seriously contend the absence of probable cause for the arrest but complains about the absence of a warrant of arrest. Where there is probable cause for the arrest of a person for a felonious offense, the absence of a warrant is immaterial, and, the arrest being valid, the search and seizure that followed was incidental thereto and valid. The mere fact that the Government might have had sufficient time to obtain a warrant for his arrest would not invalidate an otherwise legal arrest with the ensuing reasonable search and seizure.

Lee cites in support of his position Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Aquilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), which cases deal with a search of the defendant's dwelling or his residence. The *Johnson* decision is not applicable as it applies to the search of a person's home admittedly made without probable cause where the Government attempts to justify the arrest by the search while justifying the search by the arrest. This was condemned by a 5–4 Court. But as noted in Johnson, pp. 14 and 15 of 333 U.S., p. 369 of 68 S.Ct.

> "There are exceptional circumstances in which, on balancing the needs for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. * * * No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction * * *"

*Aquilar* is not applicable as it is concerned with a defective conclusionary warrant for search of a private dwelling. Lee cites no cases that advance the proposition that the arrest of an individual in a public area and a search of his person incidental thereto, based upon probable cause, is invalid, without a warrant where it had been practicable to obtain a warrant. As noted in Lefkowitz v. United States, 285 U.S. 452, at 465 and 466, 52 S.Ct. 420, at 423, 76 L.Ed. 877 (1932):

> "The decisions of this court distinguished searches of one's house, office, papers or effects merely to get evidence to convict him of crime from searches such as those made to find stolen goods for return to the owner, * * *"

The Supreme Court in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) approved the subsequent search of the defendant's business

premises, which were open to the public, without a warrant after a valid arrest made with a warrant. The search and seizure were incidental to the valid arrest and the officers were not bound to procure a search warrant, even though they had time to do so. The Court in addressing itself to this point stated at page 65, 70 S.Ct. at page 435:

> "It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against unreasonable searches. * * * "

 We find that Lee's arrest in a public place based on probable cause and the subsequent search that was incidental to the arrest was not an unreasonable search and seizure in violation of the mandate of the Fourth Amendment to the United States Constitution,[1] and the fruits of that search were properly admitted in evidence. An arrest warrant is not required even though there may be time to obtain one when the ensuing arrest is based upon probable cause. The test is one of probable cause for the arrest. See Ford v. United States, 352 F.2d 927 (D.C.Cir. 1965). F.B.I. officers and agents may make felony arrests "without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony." 18 U.S.C. § 3052. It is interesting to note that the old § 3052 demanded as a condition to arresting felons without a warrant that there be "a likelihood of his escaping before a warrant can be obtained for his arrest." United States

v. Coplon, 185 F.2d 629, 28 A.L.R.2d 1041 (2 Cir. 1950), cert. denied 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 interpreted this section as requiring a warrant for arrest when there was time to obtain one. Following this decision, in 1951 Congress amended § 3052 and in doing so eliminated the requirement of "a likelihood of his escaping before a warrant can be obtained for his arrest." This evinced an intent on the part of Congress to allow F.B.I. agents to effectively arrest without resort to a warrant whenever proper probable cause otherwise existed, and was undoubtedly enacted in the interest of more effective law enforcement.

In discussing probable cause and the standard to be applied in determining probable cause for an arrest, the Supreme Court in Brinegar v. United States, 338 U.S. 160, at 175, 69 S.Ct. 1302, at 1310, 93 L.Ed. 1879 (1949) said:

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.
>
> " 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' Mc-Carthy v. De Armit, 99 Pa.St. 63, 69 quoted with approval in the *Carroll* opinion. 267 U.S. [132] at 161 [45 S.Ct. 280 at page 288, 69 L.Ed. 543, 39 A.L.R. 790]. And this 'means less than evidence which would justify condemnation' or conviction * * * [and] has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trust-

---

1. The Fourth Amendment to the Constitution reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

worthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543]."

We realize as stated in Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) that there are limits to the permissible scope of a warrantless search incident to a lawful arrest but we proceed on the premise that if the arrest itself was lawful those limits were not exceeded in the case at bar. And again paraphrasing *Beck,* the constitutional validity of the search in this case, then, must depend upon the constitutional validity of Lee's arrest, which depends in turn upon whether, at the moment the arrest was made the F.B.I. agent had probable cause to make it. We think the agent had reasonable, trustworthy information sufficient to warrant a prudent man in believing that Lee had committed and was committing the offense of transporting stolen securities in interstate commerce.

## II.

■■ Part of the Court's charge to the jury is as follows:

"Possession of property recently stolen, if not satisfactorily explained, is a circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circumstances that the person in possession knew the property had been stolen * * *."

"If you find from the evidence beyond a reasonable doubt that the goods described in the indictment were stolen, and that while recently stolen, the property was in the possession of the accused, the jury would be justified in drawing from these facts the inference that the goods were possessed by the accused with knowledge that the property was stolen, unless possession by the accused of the recently stolen property is explained to the satisfac-

tion of the jury by other facts and circumstances in evidence."

We think this is a fair statement of the law under the circumstances of this case. The Courts have uniformly held that the possession of the fruits of crimes by an individual recently after the commission of the crime justifies the inference that the possession is with knowledge that the property was stolen. This does not raise a presumption but only an inference from which the jury may find guilty knowledge, unless such possession is explained to the satisfaction of the jury by other facts and circumstances in evidence. See Rugendorf v. United States, 376 U.S. 528, 536–537, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Herman v. United States, 289 F.2d 362, 367 (5 Cir. 1961). The charge did not say that the defendant must explain the possession to the satisfaction of the jury but only that other facts or circumstances as shown in evidence are to be taken into consideration in determining whether possession of stolen property is consistent with innocence or justifies this inference of guilty possession. The Court specifically instructed that the burden of proof remains on the Government throughout the trial and does not shift at any time to the defendant. In Harding v. United States, 337 F.2d 254, 257 (8 Cir. 1964) we approved a similar charge and held that the charge did not have the effect of placing the burden on the defendant to prove his innocence and that the burden of proof did not shift by this type of charge " * * * which only permitted, but did not require, the jury to infer from appellant's possession of the [stolen] automobile that he had transported it in interstate commerce."

■ Lee also contends that the almost five-month lapse of time from the time of the burglary of the stolen securities until his apprehension in Missouri was too long a period to warrant a finding of guilty knowledge that the securities had been stolen. In Van Gorder v. United States, 21 F.2d 939 (8 Cir. 1927), the Court held that eighty-seven days lapse of time after the theft of a United

States post office letter box key was too long a period to come under the doctrine of possession of recently stolen property. However, the possession of $100,000 of stolen securities is quite different from the possession of a letter box key. Whether possession is sufficiently "recent" to justify an inference of guilt is a question of fact solely for the jury. Chambliss v. United States, 218 F. 154 (8 Cir. 1914); Boehm v. United States, 271 F. 454 (2 Cir. 1921); United States v. Allegrucci, 299 F.2d 811 (3 Cir. 1962). The facts and circumstances of each case must determine whether the doctrine of possession of recently stolen property is to be applied.[2] We think that five months lapse of time of stolen securities would be well within the permissible time limitation for the application of the doctrine under the circumstances of this case.

### III.

 The trial court did not err in overruling Lee's motion for a judgment of acquittal. In order to find Lee guilty as charged under the indictment, the jury was required to find that the securities in question were moving in interstate commerce from Illinois to Missouri on or about September 29, 1964. The admittedly stolen securities had unquestionably at some time moved from Illinois to Missouri and were found in the possession of Lee at the St. Louis airport, and whether the securities were then moving in interstate commerce was a fact question for the jury's determination. See Parsons v. United States, 188 F.2d 878 (5 Cir. 1951). The type of articles possessed, the time lapse from the date they were stolen, the type of possession and the manner in which the articles were handled and in the process of being transported are all factors that the jury can

consider in determining whether the articles in question were moving in interstate commerce. We are here concerned with non-negotiable United States Series E Savings Bonds, which require the signature of the owner for cashing and thus are undeniably difficult to dispose of in the ordinary channels of commerce, and which cannot be legally transferred or negotiated in any manner, thus making it doubly difficult to dispose of in some gainful fashion. This fact would have to be considered in dealing with the time lapse question, together with all the other facts and circumstances in evidence, in determining whether the securities were moving in interstate commerce. The only reason for transporting the securities in interstate commerce was to make a sale or some other disposition of them and the interstate character of the securities can and does continue until the reason therefor has been accomplished. The jury here could certainly reasonably find that the securities were still in interstate commerce, as Lee was in the possession of them at the airport with flight information on his person, while he was in the process of approaching the departure and deplaning gate of a scheduled interstate flight. The jury may reasonably conclude from these facts that the stolen securities were in Lee's possession at the time of his arrest pursuant to an attempt by him to sell or otherwise dispose of them and that their interstate character had not terminated at that time. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." (Citations omitted) Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Lee had a fair trial and the evidence is certainly sufficient to warrant the

---

2. For lapse of time between theft and discovered possession in which the inference of guilty knowledge was permitted to go to the jury, see: Boehm v. United States, 271 F. 454 (2 Cir. 1921) (4 & 9 months); United States v. Allegrucci, 299 F.2d 811 (3 Cir. 1962) (3 months); United States v. DiCarlo, 64 F.2d 15 (2 Cir. 1933) (3 months); Carson v. State, 230 Md. 356, 187 A.2d 103 (1963) (4 months); State v. Brightman, 252 Iowa 1278, 110 N.W.2d 315 (5 months); McHenry v. State, 52 Okl.Cr. 20, 2 P.2d 597 (8 months); State v. Miller, 45 Minn. 521, 48 N.W. 401 (11 months); State v. Jenkins, 213 S.W. 796 (Mo.1919).

jury in finding him guilty beyond a reasonable doubt. He had the assistance of able employed counsel who adequately represented him and secured for him every legitimate legal benefit to which he was entitled.

The judgment is affirmed.