**Robert E. ANDERSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19158.**

United States Court of Appeals
Eighth Circuit.

Feb. 19, 1969.

David B. Weisman, South Bend, Ind., for appellant.

J. Roger Edgar, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and LAY, Circuit Judges.

BLACKMUN, Circuit Judge.

In a single count indictment Robert E. Anderson was charged with violating 18 U.S.C. § 2314 [1] in that, on or about August 30, 1967, he transported and caused to be transported from Goshen, Indiana, to Saint Louis, Missouri, 239 cartons containing 224,328, more or less, Monsanto Company plastic bottles of the value of $5,000 or more, knowing the bottles to have been stolen. With retained counsel Anderson entered a plea of not guilty.

---

1. "§ 2314. * * *

"Whoever transports in interstate * * * commerce any goods, wares, merchandise * * * of the value of $5,000 or more, knowing the same to have been stolen * * *

* * * * *

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

* * * * *."

At the ensuing trial before a jury, he was convicted. Chief Judge Harper imposed a sentence of 30 months.

Anderson appeals. He asserts insufficiency of the evidence to show theft or knowledge of theft by the defendant, or to prove his guilt, or that the property in question was of the statutorily prescribed value of $5,000 or more. He also claims that there was prejudicial error in the trial court's instructions.

*The undisputed facts.* Much of the evidence presented by the government is not controverted. Anderson was in the employ of Monsanto at Ligonier, Indiana, from May 13, 1964, until September 8, 1967. From 1965 to June 11, 1966, he was assigned to the Wirk Garment Warehouse in Ligonier. This was a facility part of which was rented by Monsanto for the storage of its plastic bottles. Bottles were manufactured by Monsanto at its plant about three-quarters of a mile away. All bottles manufactured at the plant were routinely stored at the warehouse to await shipment.

During the period Anderson was assigned to the warehouse he was the only Monsanto employee there. The warehouse was shared with two other tenants. It was closed at night and on the weekend. No security guard was maintained there. The shipping door was secured by a padlock. Anderson had access to the key and turned it in nightly at the plant. The padlock remained unchanged from 1965 to September 1, 1967. The two other tenants also had keys. After Anderson was reassigned to the main plant, the warehouse was unmanned.

Shortly after August 1, 1967, a letter was received by the Northwestern Bottle Company at Saint Louis. It reads in part:

"8–1–67

"Mr. Levy,
"* * * Now we have the last of the excess bottles to sell. They are all Monsanto bottles less than a year old. Below is a list of the bottles and the amounts. They are all in new unopened cartons. I would like to sell this lot at $10.00 per M freight prepaid.

| "S6282 | 2 oz. oval nat. | 31,200 |
| "S6031 | ¾ oz. oval nat. | 50,400 |
| "HDS64–385 | 4 oz. cyl. white | 34,200 |
| "S64–135 | 4 oz. cyl. nat. | 23,088 |
| "S64–159 | 4 oz. oval nat. | 10,640 |
| "S6151 | 1 oz. B/R nat. | 74,800 |

"Total 224,328 units.
"Regards
"R. E. Anderson
"c/o Roberts Beauty Salon
"111 E. Washington St.
"Goshen, Indiana.

"Samples included.
"Area 219–533–7990."

William L. Levy, Northwestern's sales manager, accepted Anderson's offer by a telephone call to Roberts Beauty Salon at Goshen. Anderson's wife received the call and the acceptance. The order was filled by the shipment by Anderson, under his own name, of the 239 cartons of plastic bottles which are the subject of the indictment. The shipment to Northwestern in Saint Louis was by Shippers Dispatch, Inc., a common carrier. Anderson and another loaded the cartons on

a truck from a small garage-type building in Goshen. The bottles were received by Northwestern on August 30, 1967.

*Testimony presented by the three witnesses for the defense.* Anderson took the stand. He forthwith acknowledged that in September 1963 he had been arrested on a bank larceny charge lodged in federal court for the Northern District of Indiana, had pleaded guilty, had received a "one year suspended sentence and three years probation", and had successfully completed the probation. He further testified that when he shipped the 239 cartons of bottles to Northwestern he did not know or suspect that they may have been stolen; that he had acquired the bottles by purchase from a man named Red Crawford who had come to the warehouse at Ligonier in 1966; that Crawford said he had some salvage bottles which had been fire and water damaged and wondered if Anderson knew where there was a market for them; that the witness said he did not; that Crawford returned on other occasions; that the witness finally purchased 443 cartons of bottles from Crawford for $600 in cash in April 1967; that Crawford delivered them himself to storage space Anderson rented in a two-story garage building in Goshen; that when the bottles were delivered some of the cartons were torn and the tapes pulled loose and others had been squashed; that he retaped and reworked the cartons and put new tape on them; that his wife and stepdaughter helped him with this; that about May 1, 1967, he sold 87 cartons to M. J. Cobbs in Detroit and then 117 cartons to Twin City Plastic Packaging in Minneapolis; that Roberts Beauty Salon is owned by himself and his wife; and that he wrote the letter of August 1 to Northwestern and signed his name to it.

Anderson also testified that the other tenants of the warehouse often were still loading when he left at night; that he has passed the warehouse on a weekend and seen it open; that once a semi-trailer was there fully loaded with Monsanto bottles; that Monsanto ran inventories at the warehouse twice a year but never made a spot check; that he maintained a record of what came in and what went out; that he had no shortage while he was there; that he had never stolen bottles from Monsanto or talked to anyone he knew had stolen bottles from the company; that he had never handled or shipped any bottles he knew had been stolen from it; and that he had not seen Crawford since the delivery.

On cross examination Anderson said that he did not obtain a receipt from Crawford; that, so far as he knew, Crawford was in Chicago but he did not know where; that in his letter to Northwestern he described the cartons as new and unopened; and that he did this because they were resealed.

Mrs. Anderson took the stand and corroborated her husband's testimony about the call from Mr. Levy and the shipment. She said, however, that she did not participate in taping the cartons and that when she and the defendant saw the warehouse door open one Sunday with a truck there her husband did nothing about it.

Debbie Wilson, 15-year-old daughter of Mrs. Anderson and stepdaughter of the defendant, testified that she went with the defendant to the garage; that boxes containing bottles were stored there; that the boxes were damaged; and that she helped tape and stamp them with the address of Northwestern Bottling Company in Saint Louis.

A. *The sufficiency of the evidence.* For a conviction of Anderson under 18 U.S.C. § 2314 the government was required to produce evidence from which a jury could find, beyond a reasonable doubt, (1) that the defendant transported goods in interstate commerce; (2) that the value of the goods was $5,000 or more; (3) that the goods so transported were stolen; and (4) that the defendant at the time of the transportation knew that the goods were stolen. It was not necessary to prove that the goods were stolen by the defendant.

The shipment of bottles by Anderson from Indiana to Missouri is conceded. The first of the four requirements is thus satisfied. The defense asserts that there is no evidence in the record that the other three requirements were met.

1. *As to theft and knowledge.* The defense argues that there is no evidence of any shortage of inventory at the warehouse while Anderson worked there; that, actually more bottles of one model, No. 64–385, were shipped than Monsanto claimed were missing; that it thus must be conceded that Anderson came legitimately into possession of bottles of that particular model; that no other evidence was offered for his possession of those legitimately acquired bottles; that the jury's conclusion was necessarily based on speculation or conjecture; and that mysterious disappearance is not proof of theft and could even be the result of errors in production or shipment records.

██ We may observe, of course, that frequently guilty knowledge is incapable of direct proof and is established, if at all, by circumstantial evidence. And the fact of theft, just as any other fact, may be proved circumstantially. Gregory v. United States, 365 F.2d 203, 204 (8 Cir. 1966), cert. denied 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676. See Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954), and Cox v. United States, 284 F.2d 704, 711–712 (8 Cir. 1960), cert. denied, 365 U.S. 863, 81 S.Ct. 831, 5 L.Ed.2d 825.

Elmer J. Smith, supervisor at Monsanto's Ligonier plant, testified that he examined the shipment of bottles received by Northwestern in August 1967; that these "basically" were produced at the Ligonier plant; that they were "new" and "first quality" bottles and were manufactured, for the most part, in February, March and April of 1967; and that 14 of the 239 cartons were produced at the Monsanto plant at Deep River, Connecticut, and shipped to Ligonier.

The Ligonier plant manager, Fitzhugh Lee Turner, testified that bottles with the code numbers used in Anderson's letter to Northwestern were stored at the Wirk warehouse during 1967; that he instituted an inventory analysis of bottles with those code numbers there on September 8, 1967, the final day of Anderson's employment by Monsanto; that this disclosed the following shortages as compared with the Anderson shipment:

| Model | Anderson Shipment (Units) | Monsanto-Ligonier Shortages |
|---|---|---|
| 6282 | 31,200 | 40,880 |
| 6031 | 50,400 | 190,900 |
| 64-385 | 34,200 | 14,975 |
| 64-135 | 23,088 | 104,208 |
| 64-159 | 10,640 | 22,926 |
| 6151 | 74,800 | 178,630; |

and that, to his knowledge, no bottles were ever sold from Monsanto's Ligonier plant to Anderson.

Thus from these two witnesses we have testimony that bottles in the shipment came from the Ligonier plant; that they were new bottles most of which were manufactured in the early months of 1967; that at the time Anderson ceased his employment with Monsanto there was a shortage in every model shipped to Northwestern; and that each such shortage, except one, exceeded the number of bottles of that classification so shipped.

██ There is, of course, no direct testimony that Anderson ever entered the warehouse in 1967 or took bottles from it. Because there were two other tenants of the warehouse, because those tenants had keys, and because the warehouse after Anderson's departure was unmanned, it is possible that access to the warehouse was gained by someone other than Anderson and that Monsanto bottles were stolen by such an intruder. It is also possible that error might have crept into Turner's inventory analysis of shortages. Contrastingly, it is possible that Anderson, in view of his possession of the key during his warehouse assignment, continued to have access in 1967. And he was in actual possession of Monsanto bottles. It is for the jury to

consider these opposing possibilities and to draw the appropriate inferences.

 We are not persuaded that because the shortage in Model No. 64–385 was less than the number of bottles of that model shipped by Anderson, the prosecution's entire case must fall. This also is a factor to be weighed by the jury. It was stressed, and appropriately so, by the defense in its closing argument. But legitimate acquisition of part of a shipment does not negate a violation of § 2314 if the remainder of the shipment falls within the reach of the statute.

Anderson, of course, as has been noted, flatly denies any violation of the statute and asserts that he acquired the bottles which constituted the Northwestern shipment by legitimate purchase from a man named Red Crawford. Anderson's stated purchase price, however, for almost double the number of the cartons sold to Northwestern was for cash and in an amount substantially less than the bottles were worth. And Crawford was not produced as a witness. His absence and the nominal purchase price add strength to the prosecution's case.

In summary, there was ample evidence from which a proper inference could be drawn that the bottles Anderson shipped to Northwestern were stolen and that he then knew they were stolen. The issues of fact were resolved by the jury against Anderson. We are not in a position to say that they were improperly so resolved. Lake v. United States, 375 F.2d 442 (9 Cir. 1967).

The defense urges upon us the case of United States v. Rappaport, 312 F.2d 502 (2 Cir. 1963). We find that case to be of little assistance to Anderson. It possesses trial, fact, and conspiracy aspects which have no counterparts here. That defendant was charged with a violation of 18 U.S.C. § 659 (theft of goods moving in interstate commerce). He, among four defendants originally charged, stood to gain very little by the alleged criminal transaction, for the stock certificates in question, which appeared to be in a third party's name, were used as collateral for a small bank loan to Rappaport, and the great bulk of the proceeds of their sale went to the third party. Rappaport's possession of the stolen certificates was questionable at best. Anderson, on the other hand, concededly was in sole possession of the bottles which are the subject of his indictment.

2. *As to value.* The defense argument here is that the government produced testimony as to "two different values of the property shipped"; that the only reference as to value is as to the shipment received by Northwestern; and that the value of that shipment included 43 cases of Model No. 64–385 which were not part of the Monsanto shortage.

Much of what we have said above is applicable here. Specifically, however, witness Turner testified that the Anderson shipment had "distributor price" and "direct price" evaluations as follows:

| Model | Anderson Shipment | Distributor Price | Direct Price |
|---|---|---|---|
| 6282 | 31,200 | $ 885.46 | $1,150.34 |
| 6031 | 50,400 | 1,013.04 | 1,209.10 |
| 64-385 | 34,200 | 1,020.52 | 1,330.38 |
| 64-135 | 23,088 | 830.94 | 1,078.67 |
| 64-159 | 10,640 | 410.92 | 533.92 |
| 6151 | 74,800 | 1,671.53 | 2,171.84 |
| | | $5,832.41 | $7,474.25; |

that the direct price is the price to the consumer; and that a distributor is given a discount because he performs a service. When, on cross examination,

Turner was asked whether he took the condition of the bottles into consideration, he said, "I assume they were full-value containers, based on my examination of them at Northwestern Bottle". He said nothing as to production cost of the bottles.

■■ Turner's testimony supports a jury finding that the value of the Anderson shipment was $5,000 or more. Market value is the standard. 18 U.S.C. § 2311. Under proper circumstances retail value may prevail over wholesale or replacement value. Cave v. United States, 390 F.2d 58, 67 (8 Cir. 1968), cert. denied, 392 U.S. 906, 88 S.Ct. 2059, 20 L.Ed.2d 1365. With the evidence here, however, that refinement need not concern us. What the defense argument comes down to is that, because the Monsanto shortage in Model No. 64–385 was less than the number of units of that model in the shipment, the valuation proof is deficient. The answer to this suggestion, of course, is to strip the Model No. 64–385 units down to the amount of the shortage, namely, 14,975, a difference of 19,225 bottles. When the value of the excess bottles (those over the shortage) is subtracted from the shipment totals, on either price, one still has figures in excess of $5,000.

This aspect of the defense argument, therefore, comes to nothing. The jury was entitled to conclude that the shipment consisted of stolen bottles at least up to the point of the Monsanto shortages. Of course, they need not have stopped there. But even with this limitation the statutory minimum is satisfied.

Again, the sole authority cited by the defense, this time Backun v. United States, 112 F.2d 635 (4 Cir. 1940), is of no help. The property there in question was silverware. Not all of it was shown to have been stolen. The part which was identified as stolen was valued at less than $5,000. 112 F.2d at 638. Here the Monsanto shortages, under either valuation, exceeded that figure.

■ 3. *As to guilt.* The argument here focuses on time, that is, that Anderson's possession of the bottles was not sufficiently recent after the Monsanto shortage for the invocation of the theory of "recent unexplained possession of stolen property." The defense cites Van Gorder v. United States, 21 F.2d 939, 941 (8 Cir. 1927), where this court, forty years ago, observed that possession of stolen goods (post office keys) 87 days after they were missed by itself raised no presumption of guilty knowledge or that the possessor was the thief unless it was "so recent that ample time and opportunity may not have been given to transfer the stolen property from the thief to another. * * * "

We have had recent occasion to discuss the implications of possession of stolen property and to note the Van Gorder case. In Lee v. United States, 363 F.2d 469 (8 Cir. 1966), cert. denied, 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227, almost 5 months had elapsed between a burglary of securities and a defendant's apprehension with the securities in his possession. Judge Gibson, speaking for this court, said, 363 F.2d at 475:

"Whether possession is sufficiently 'recent' to justify an inference of guilt is a question of fact solely for the jury [citations omitted]. The facts and circumstances of each case must determine whether the doctrine of possession of recently stolen property is to be applied [footnote with citations omitted]."

Like comment appears in Aron v. United States, 382 F.2d 965, 971–972 (8 Cir. 1967).

Certainly, as we really have already noted above, this record contains enough for the jury permissibly to infer that Anderson had guilty knowledge of the stolen character of the property. There is the manufacture of most of the bottles in the Anderson shipment within a 3-month period in 1967. There is Anderson's letter of August 1 to Northwestern. There is Anderson's shipment of the

bottles in late August. There is a padlock unchanged until September 1, 1967. Then, too, there are Anderson's claimed cash purchase at a price little more than nominal and his offer to sell to Northwestern at a price substantially less than market.

B. *The instructions.* Complaint is made of the court's instructions in two respects:

1. *Possession of property recently stolen.* It is argued that the court's reference to possession of property recently stolen indicated to the jury that the defendant's explanation of his possession of the bottles was not a satisfactory one; that the defendant "gave an explanation which was logical"; that the court, in effect, commented adversely on the evidence; and that the first paragraph of that portion of the charge which we set forth in the footnote [2] had the effect of shifting the burden of proof to the defendant and deprived him of a fair trial.

■ We are not so persuaded. The charge given which, incidentally, closely follows and perhaps is taken from one found in W. Mathes & E. Devitt, Federal Jury Practice and Instructions, § 10.11 (1965), is, in our view, fair and

proper. This court in recent cases has upheld a like charge against challenge. Lee v. United States, supra, 363 F.2d at 474; Cloud v. United States, 361 F.2d 627, 629–630 (8 Cir. 1966); Harding v. United States, 337 F.2d 254, 257 (8 Cir. 1964); Minor v. United States, 375 F.2d 170, 173 (8 Cir. 1967), cert. denied, 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177; Aron v. United States supra, 382 F.2d at 975–976.

We do not regard United States v. Lefkowitz, 284 F.2d 310, 312–314 (2 Cir. 1960), cited by the defense, as authority which disapproves the instruction. As the Second Circuit pointed out, the instruction there under challenge spoke in terms of casting the burden on the defendant. That instruction and the one employed here are not comparable. Judge Matthes noted the difference between them in his opinion in Harding v. United States, supra, 337 F.2d at 257.

2. *Valuation.* The objection to the valuation instruction corresponds with the defense position with respect to the sufficiency of the evidence as to value. What we have said above applies equally to the instruction. We perceive no error in its use.

Affirmed.

2. "Possession of property recently stolen, if not satisfactorily explained, is a circumstance from which the jury may reasonably draw the inference and find that the person in possession knew the property had been stolen.

"The term 'recently' is a relative term which has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evidence. The longer the period of time since the theft, the weaker the inference which may be drawn from such unexplained possession, if so.

"If you find from the evidence beyond a reasonable doubt that the 239 cartons containing 224,328, more or less, Monsanto Company plastic bottles described in the indictment were recently stolen and were caused to be transported in interstate commerce by the defendant as charged, and that while recently stolen the 239 car-

tons containing 224,328, more or less, Monsanto Company plastic bottles were in the possession of the defendant, and that such possession is not satisfactorily explained, the jury may draw from these facts, if you so find, the inference that the accused had knowledge that they were stolen.

"However, the jury is not bound or required to find that defendant had knowledge that the 239 cartons containing 224,328, more or less, Monsanto Company plastic bottles were stolen merely because he was in possession of the stolen items, and unless the jury believes beyond a reasonable doubt that the defendant knew the 239 cartons containing 224,328, more or less, Monsanto Company plastic bottles were stolen at the time he caused them to be transported in interstate commerce, if so, you are to find the defendant not guilty."