Merkle C. **ALTOM**, Petitioner-Appellant,

v.

**UNITED STATES** of America,
Respondent-Appellee.

No. 71–1134.

United States Court of Appeals,
Seventh Circuit.

Dec. 23, 1971.

Rehearing Denied Jan. 17, 1972.

Dean E. Richards, DeWitt, Richards & Manahan, Indianapolis, Ind., for petitioner-appellant.

Stanley B. Miller, U. S. Atty., Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., for respondent-appellee.

Before DUFFY, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

Appellant Merkle Altom was found guilty in a bench trial of violating 18 U.S.C. § 641[1] and was sentenced to serve two years for each of four counts, the terms to run concurrently. He was also fined $1500 and court costs. The district court then suspended the sentences and placed Altom on probation for two years. From the convictions, Altom has taken this appeal.

The first three counts of the indictment charged that on December 1, 1968, Altom received, concealed and retained with intent to convert to his own use three stolen electronic generators, each having a value over $100, which were the property of the United States Government, and that Altom then knew them to have been stolen. The fourth count charged that Altom, on or about March 26, 1969, wilfully and knowingly did steal, purloin and convert to his own use a fourth generator, also Government property and having a value in excess of $100.

On February 3, 1970, as part of an investigation concerning suspected thefts at the federal Naval Avionics Facility in Indianapolis, agents of the Federal Bureau of Investigation interviewed the defendant, who was employed at the Facility as a duty electrician. They asked him if they could search his house within the next few days and he orally consented.

On the morning of February 4, 1970, the F.B.I. agents acquired a list of items which had been reported stolen from the Naval Avionics Facility. Later that day, four F.B.I. agents came to Altom's home and asked Altom to allow them to look for items missing from the Facility. When Altom inquired whether the agents were only going to be searching for the three items (two survival radios and a paint spray gun) he had been questioned about the day before, the agent in charge of the search (John Aziere) replied that he had a list of other items for which he was going to be looking. Agent Aziere then produced a Consent to Search form to be signed. Altom objected to a phrase authorizing the agents to take from his premises "any letters, papers, materials or other property which they may desire." Aziere then scratched out that language and substituted "see back of this form." On the reverse side, he enumerated certain items, including three pieces of TV test equipment (Telemet Company generators),[2] which were missing from a

---

1. 18 U.S.C. § 641 (1970) provides:
   *Public money, property or records.*
   "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
   "Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
   "Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such prop-

erty does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.
   "The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."
   June 25, 1948, c. 645, 62 Stat. 725.

2. The full list of items was: (1) 2 survival radios, Serial Numbers CKJ 212 and CKJ 3084; (2) 1 spray gun and cup, Binks #19, Serial Number 18235282; (3) 3 small 2½" x 2½" audio speakers; (4) Skill [Skil?] drill Model 597, marked D 430; (5) electric hand drill, Serial Number 3042-285-642; (6) telephones; (7) diodes used in battery charger; (8) test equipment for TV, Models 3502, 3512 and 3507, 12" square [the Telemet

console that had been returned to the Naval Avionics Facility by Ellsworth Smith, just before Smith ceased employment at the Facility. Smith was a friend of the defendant and a fellow electronics buff.

The agents searched Altom's basement workshop for several hours, during which time they recorded type, serial numbers, and descriptions of about 40 items. The agents found and seized the three generators that had been listed on the back of the Consent to Search form. Glue and adhesive were observed on the outside of the generators in the shape of calibration control labels, property tags and console part tags. The serial numbers of the generators were missing from their casings.

Altom told the agents that the box containing the generators was one of several boxes placed in his basement by Smith. At trial, the defendant indicated that he did not know from direct observation that Smith had left the box but he assumed that Smith had done so because Smith had a key to Altom's house and allegedly had been going down to the basement workshop without disturbing Altom, to store or check equipment. Smith, however, testified that he had not stored any equipment at the defendant's house. He also said that the only equipment he had lent Altom during their friendship was a radio, a B & K television analyst and a wood jointer.

In the same box containing the three Telemet generators, there was also a fourth generator, a Wavetek. The F.B.I. agents did not seize the Wavetek, but noted its description and replaced it in the box. They did not know at that time that it was stolen property. Later, Naval Avionics Facility officials informed the F.B.I. that the Wavetek generator was Government property stolen from the Facility.

The Wavetek generator, which is the subject of Count IV of the indictment, was calibrated on March 26, 1969, at the Naval Avionics Facility. A couple of months later, it was found to be missing from the Facility. The last time Ellsworth Smith was inside the Facility was in December 1968, when he had been admitted as a guest. The Facility was guarded and property was supposed to be removed only with a property pass. The defendant had access to about 90 percent of the Facility through the use of the duty electrician keys that he carried. The areas to which Altom had access included the areas from which generators were taken.

On December 10, 1970, the agents returned to Altom's home, arrested Altom on an outstanding arrest warrant, and, pursuant to a newly-acquired search warrant, seized the Wavetek generator.

On this appeal, Altom strongly challenges the reasonableness of the search that ultimately resulted in the seizure of the Wavetek generator, which Count IV of the indictment alleged had been stolen by Altom from the Facility. The defendant is not arguing that his consent to search was invalid. Rather, he contends that the consent was a limited one and that the F.B.I. agents abused that consent by conducting a search far exceeding the agreed limits. Thus, a legitimate search for specific, listed items became, according to Altom, an unconstitutional "all-out no holds barred search." He argues that the results of the search (the Wavetek generator) should be inadmissible because the search violated his fourth amendment rights. The obtaining of a search warrant for the Wavetek was allegedly merely an attempt to give some semblance of reasonableness to the whole transaction.

We must first consider the effect of the wording of the Consent to Search form that Altom signed on February 4. The front of the form reads in part: "I, Merkle C. Altom, . . . hereby authorize . . . [named Special Agents

generators]; (9) Skill [Skil?] hand sander, portable electric, Model 852; (10) microphone, Model 600E; (11) Deviobiss [sic], Model JGA 502 paint

sprayer; (12) or any other item which may have the mark U. anchor S. or NAFI stamped on it.

of the F.B.I.] to conduct a complete search of my premises. . . ." However, as previously noted, upon objection by Altom the form was modified.

The form that Altom signed did not in any way limit the scope of the search; it only limited the items that the agents were authorized to take from Altom's premises. In oral argument, appellant's counsel stated that the understanding between Altom and Aziere was that the agents would confine their search to the items listed. Although the agent's testimony at trial is not free from ambiguity on this point, it does seem to support the defendant's view.

That the form was not meant to apply literally is also supported by the fact that, although the form authorized a "complete search of my premises," the agents confined their search to Altom's basement workshop.

In this appeal, Altom describes at length what the agents did during the several hour search. He points out, for example, that the searchers cataloged the serial numbers and identifying marks of about forty items in Altom's workshop not all of which had been specified in the list developed from information supplied by Facility officials. This cataloging included a description of the Wavetek generator, which was in a box containing the three Telemet generators for which the F.B.I. agents concededly had obtained a valid consent to search.

In its brief, the Government asserts that the seizure of the Wavetek generator was entirely lawful but provides no cases to support its conclusion. We find more significance in the Government's statement that the legality of the seizure was not challenged in the district court. The record before us reveals no pretrial motion to suppress, and defendant's trial counsel made no objection to the admission into evidence of the Wavetek generator described in Count IV of the indictment. The Government argues that a motion to suppress evidence cannot be made for the first time on appeal, citing United States v. Phillips, 375 F.2d 75, 78 (7th Cir.), cert. denied, 389 U.S. 834, 88 S.Ct. 40, 19 L.Ed.2d 95 (1967), and Butler v. United States, 153 F.2d 993, 994 (10th Cir. 1946).

We think the Government's point is sound. It is well established that a court of appeals will not normally consider objections to evidence where no objection to admission was made in the federal district court. *See, e. g.,* United States v. Chastain, 435 F.2d 686, 687 (7th Cir. 1970).

"Appellant Davis urges the defense of illegal search and seizure, but . . . Davis . . . [did not see] fit to move to suppress the seized evidence on these grounds either at or before the trial. None of the appellants objected to the introduction of the seized materials on the ground that their constitutional rights had been violated. We, therefore, do not consider this point." United States v. Burrell, 324 F.2d 115, 119 (7th Cir. 1963), cert. denied, 376 U.S. 937, 84 S.Ct. 791, 11 L.Ed.2d 657 (1964).

There may be numerous reasons for counsel not objecting to offered evidence. The defendant on appeal makes no claim that his representation at trial was inadequate. His counsel below presented a vigorous defense. A court of appeals should not substitute its judgment of proper trial tactics for that of the lawyer in the forum. Wyche v. United States, 193 F.2d 703, 704 (D.C. Cir. 1951), cert. denied, 342 U.S. 943–944, 72 S.Ct. 556, 96 L.Ed. 702, reh. denied, 343 U.S. 921, 72 S.Ct. 675, 96 L. Ed. 1334 (1952).

We are aware, of course, that if "plain error" is committed in a criminal case, an appellate court may notice it and may correct it even though it was not brought to the attention of the trial judge. Fed.R.Crim.P. 52(b). However, "[i]t is settled law that the plain error rule should be applied with caution, and invoked only to avoid a miscarriage of justice." United States v. Robinson, 419 F.2d 1109, 1111 (8th Cir. 1969). An appellate court's power under Rule 52(b) is "discretionary and may be exercised

only to prevent a manifest miscarriage of justice." United States v. Grasso, 437 F.2d 317, 319 (3d Cir. 1970), as amended on denial of rehearing (1971), cert. denied, 403 U.S. 920, 91 S.Ct. 2236, 29 L.Ed.2d 698 (1971).

If the defendant had desired to have the question of the inadmissibility of the Wavetek considered, he could have properly raised the issue in the trial court by filing a motion to suppress or by objecting to the introduction of the Wavetek generator in evidence. The record on appeal would then reveal the pertinent facts more fully. At trial, the defendant apparently relied heavily on the theory that he did not know that any of the generators were in his basement and that his friend, Ellsworth Smith, sometimes stored boxes there, the exact contents of which Altom was ignorant. The defense emphasized Altom's "good character" and Smith's expertise in electronics.

The district judge as the finder of fact did not accept the defendant's theory. "We see no reason why the defendant, after he has pursued the foregoing course, can, after he determines it is unsuccessful, reverse his position and claim that the . . . [evidence was] improperly before the jury. If the jury had accepted defendant's theory, he . . . would not have been convicted." Gendron v. United States, 295 F.2d 897, 903 (8th Cir. 1961).

■ We appreciate the defendant's concern on appeal that law enforcement officers might abuse a citizen's consent to a limited search and conduct an unwarranted general search. However, a party must make a strong showing to justify the invocation by a court of appeals of the plain error rule. The record in this case is insufficient to require the application of that rule. It does not clearly support the appellant's contention that the entry of the agents was gained through misrepresentation, deceit and subterfuge. We note, too, that the Wavetek generator was plainly visible in a box with three other generators that had been included in the list on the reverse side of the consent. Apparently the Wavetek, like the three Telemet generators, had glue marks and other residue marks of tags the same size as tags used at the Naval Facility.

Altom also challenges his conviction under Count IV on the ground that the Government failed to sustain its burden of proving the necessary elements of the crime therein charged. The appellant points out that the case against him was based on circumstantial evidence and that the Government had no eyewitnesses who could state that Altom took any property from the Naval Avionics Facility on any date. The presence of the Wavetek generator in his basement only raised a suspicion. Altom argues that circumstantial evidence must not only be consistent with guilt, but it must also be inconsistent with every reasonable hypothesis of innocence.

■■ We cannot agree with the appellant that the Government failed to sustain its burden. As then Circuit Judge Blackmun stated in Anderson v. United States, 406 F.2d 529, 532 (8th Cir. 1969), "the fact of theft, just as any other fact, may be proved circumstantially." "Intent, of course, usually can only be shown by circumstantial evidence." Aron v. United States, 382 F.2d 965, 970 (8th Cir. 1967). It is well established that possession of recently stolen goods supports an inference of participation in the theft. See, e. g., United States v. Coppola, 424 F.2d 991 (2d Cir.), cert. denied, 399 U.S. 928, 90 S.Ct. 2246, 26 L.Ed.2d 795 (1970); United States v. De Sisto, 329 F.2d 929, 935 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).

On this appeal, we must view the evidence in its aspect most favorable to the Government. The Government established that the defendant had possession of the recently stolen, tagless Wavetek in his basement in a box with three other stolen generators, that the generator was stolen from the plant where the defendant worked, that the defendant had access to the area from which the Wavetek had been stolen and that the defend-

ant had an interest in the field of electronics.

The defendant emphasizes that other employees also had access to the area in question. The Wavetek generator, however, was found in Altom's basement, not in the house of one of the other employees. Ellsworth Smith, whom defendant's trial counsel hinted was the real thief, was last inside the Facility in December 1968. The Wavetek generator was removed some time between the end of May 1969 and June 1969.

■ The defendant is correct that the inference of theft to be drawn from possession of recently stolen property must be made in light of all the circumstances of a case. However, the district court found that no reasonable explanation consistent with innocence existed, stating:

> "[T]he case . . . boils down to a question of who are you going to believe. Mr. Smith has been referred to throughout the testimony. . . . [A]fter hearing the evidence and after paying particular attention to the testimony of Mr. Smith and Mr. Altom, observing their demeanor on the witness stand, considering the evidence relating to this question which has figured so much in the testimony, I am convinced beyond a reasonable doubt that the defendant is guilty as charged. . . . [I]t just shakes down to a matter of credibility, corroboration."

It has not been demonstrated to us that the district court's credibility determination should not be accepted on this appeal.

■■ The appellant advances a similar lack of evidence argument in regard to his convictions under Counts I, II and III (the "receiving, concealing or retaining" counts). Much of our discussion above is applicable here. Possession of stolen property even 15 months after the theft was discovered can give rise to the inference that the possessor knew that the property had been stolen. United States v. Riso, 405 F.2d 134, 138 (7th Cir. 1968), reh. denied (1969), cert. denied, 394 U.S. 959, 89 S.Ct. 1306, 22 L. Ed.2d 560 (1969); United States v. Allegrucci, 299 F.2d 811, 815 n. 4 (3d Cir. 1962. *See also* United States v. Hood, 422 F.2d 737, 741–742 (7th Cir.), cert. denied, 400 U.S. 820, 91 S.Ct. 38, 27 L. Ed.2d 48 (1970). "Whether possession is sufficiently 'recent' to justify an inference of guilt is a question of fact solely for the jury. . . . The facts and circumstances of each case must determine whether the doctrine of possession . . . is to be applied." Lee v. United States, 363 F.2d 469, 475 (8th Cir.), cert. denied, 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966). The inference used to prove the first three counts is legitimate. We will not disturb the determination by the finder of fact that the inference arising from the possession of stolen property was not overcome.

Altom apparently further contends that the Government was required to show from whom the property was received, and that it failed to do so. He interprets the Government's case as an attempt to prove that he himself stole the property that he was charged in the first three counts with receiving. He then argues that where the prosecution establishes that the accused, and not some other person, stole the property specified in an indictment charging receiving, the prosecution has failed to prove the offense of receiving and concealing the property.

■ The appellant is correct that a person cannot be convicted and punished for both stealing Government property and for receiving or concealing and retaining the same property. Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). Altom does not, however, come within this proscribed category. The stealing count (Count IV) relates to a different item of property than the receiving counts do.

■ Altom gives us no authority for the proposition that the Government must show who actually stole the property that a defendant is charged with receiving. The Government in this case

did prove by circumstantial evidence that the three Telemet generators were taken from the Facility. We agree with the Fifth Circuit in United States v. Minchew, 417 F.2d 218, 220 (5th Cir. 1969), cert. denied, 397 U.S. 1014, 90 S. Ct. 1246, 25 L.Ed.2d 427 (1970), in which it stated: "[It is unnecessary that] the trial court [instruct] the jury that they could convict defendant of retaining Government property only if they first found that he had not stolen that property. Defendant advances no line of logic, and we can think of none, that compels or persuades us to expand *Milanovich* to the limits he suggests." Where evidence is presented that a defendant actually stole the goods that he is charged with receiving, and the indictment includes both offenses, courts have held that the proper resolution of this inconsistency is for the trial court to instruct the jury in the alternative, that is, to convict of one offense or the other, but not both. *Milanovich, supra*; Fuller v. United States, 132 U.S.App.D. C. 264, 407 F.2d 1199, 1223 (1967), on reh. *en banc* (1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

The defendant cites Cartwright v. United States, 146 F.2d 133 (5th Cir. 1944), and that case does contain some language that would seem to support his argument.[3] We believe though that that language must be read in the context of the offenses involved in that case. The defendant in *Cartwright* was convicted of both stealing certain enumerated articles of Government property and of concealing the same. We emphasize that in the instant case the Government did not charge Altom with both stealing and concealing the Telemet generators.

What complicates Altom's case is that the kind of evidence adduced by the Government to prove the receiving counts is also the basis for a permissible inference of guilt of theft. However, in its case under Counts I, II and III, the Government was relying on only the first inference permitted to be drawn from the fact of possession, namely, that the possessor knew the property to have been stolen.

The final point the appellant raises is that the trial court erred in allowing the Government to present testimony about pieces of shop equipment in Altom's basement that were not included in the indictment. Altom claims that the Government was trying to imply that all of this equipment had been stolen by him from the Facility and that the introduction of these results of the search had a great prejudicial effect.

We cannot agree that the trial court's admission of testimony about other items found during the search created such a prejudicial effect as to require reversal or a new trial. The agent's testimony was acceptable as providing proper background. Moreover, Number 12 on the reverse side of the Consent to Search form that Altom signed reads "OR any other item which may have the mark . . . [U. anchor S.] or NAFI stamped on it." Because of defense counsel's objections to testimony about the equipment in Altom's workshop, only a few items were specifically mentioned at trial, and of these few items, at least one had a "U. anchor S." on it.

Also, although this was a criminal rather than a civil case, we cannot be unmindful that this was not a jury case.

---

3. "The government misapprehends appellant's second point against the conviction on the second count [concealing Government property knowing it to have been stolen]. It devotes its discussion on that point to defending the indictment as sufficient though it fails to allege that the property had been stolen by some person other than the defendant. The strength of appellant's attack and the weakness of the government's defense does not lie in the fault in the indictment. It lies in the proof, which, establishing that not some other person but appellant himself stole the property, failed to establish the commission of the offense denounced by the statute." Cartwright v. United States, 146 F.2d 133, 135 (5th Cir. 1944).

"The admissibility of evidence . . . shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Rule 26, Fed. R.Crim.P.

■ Generally, it is held that a broad rule of admissibility is favored in the federal courts. It is designed to permit the admission of all evidence which is relevant and material to the issues in controversy, unless there is a sound and practical reason for excluding it. United States v. Sowards, 370 F.2d 87, 90 (10th Cir. 1966). We note, too, that appellate courts have held that in criminal cases, the trial judge has wide discretion in ruling upon the admissibility of evidence. E. g., Hale v. United States, 406 F.2d 476, 480 (10th Cir.), cert. denied, 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 (1969).

Further, the federal courts have recognized in the case of bench trials a presumption that the trial court considered only the competent evidence and disregarded all evidence that was incompetent. Thompson v. Baltimore & O. R. R., 155 F.2d 767, 771 ((8th Cir.), cert. denied, 329 U.S. 762–763, 67 S.Ct. 122, 91 L.Ed. 657 (1946); United States v. 6.87 Acres, 147 F.2d 351, 353 (2d Cir. 1945). See also C. McCormick, Handbook of the Law of Evidence § 60, at 137 (1954). Here there was competent evidence to support the conviction, and we find no prejudice to the defendant.

In accordance with the foregoing discussion, we affirm the defendant's convictions on Counts I, II, III and IV.

Affirmed.