**UNITED STATES of America, Appellee,**

v.

**Richard Lee KNIGHT, Appellant.**

**No. 76–1059.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1976.

Decided May 25, 1976.

Allan Goodloe, Jr., Clayton, Mo., for appellant; Shaw, Howlett & Schwartz, Clayton, Mo., on brief.

Frank A. Bussmann, Asst. U. S. Atty., St. Louis, Mo., for appellee; Donald J. Stohr, U. S. Atty. (Barry A. Short, U. S. Atty., effective May 15, 1976), St. Louis, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and WEBSTER, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from a conviction for possession of goods stolen from an interstate shipment in violation of 18 U.S.C. § 659. Defendant's basic contention is that the district court erred in admitting evidence of another similar crime. We reverse and remand for a new trial.

At the time of his arrest, defendant Richard Lee Knight was 29 years old, married, and had no prior convictions. He made his living in the taxicab business and supplemented his income by buying and selling merchandise of various kinds. On July 28, 1975, a warrant was issued authorizing a search of defendant's home for certain stolen goods. The search was conducted while the defendant was not at home, and after the officers found an organ, an amplifier and a TV set, all recently stolen from Riss International Trucking Company's loading docks, they asked Knight's wife to tell her husband to come to the police station the next day. Knight reported to the police station as requested, and when questioned, he explained that he bought the merchandise in mid-June for $1,000 in cash from a stranger named Robert Sorrell, who Knight said had contacted him to ask for a job as a cab driver. Knight showed the investigating officers a receipt purportedly signed by Sorrell, told them that Sorrell lived nearby in the Florissant, Missouri, area and gave them a description of the man. The authorities were unable to locate any individual named Sorrell. They apparently did locate Howard Combs, who had signed the receipt as a witness, but Combs did not testify for either side.

At trial, the government offered into evidence the defendant's explanation of his possession of the stolen items. In addition, a police officer was called to testify as to defendant's responses to questions about his possession of a large quantity of coffee.

The defendant objected, stating that there was no proof that the coffee was stolen and that the testimony was irrelevant to show knowledge and intent. The trial court asked counsel to approach the bench and required the government to show relevancy before admitting the proof. At that time the prosecutor stated to the trial judge:

> Well, Judge, we're *not* certainly *saying the coffee was stolen*. We are just saying that he didn't care. He said, when asked about the coffee, he didn't care whether it was stolen or not, that he got it from a friend on a trucking dock (emphasis added).

Thereafter, the court allowed the officer to testify:

> I asked him if he recently obtained any coffee and he stated he obtained some coffee from a friend of his who worked on a trucking dock which, when I asked him did he feel that the coffee was stolen

he said it probably was. When I asked him if he would identify the person who gave him the coffee he stated that he did not wish to; he didn't want to get the person in any trouble.

When the defendant took the stand, the prosecutor cross-examined him about the coffee. At that time the exchange between the prosecutor and the defendant was as follows:

Q. And I believe you were asked if you thought the coffee was stolen and you said, I believe, that you suspected that it was?

A. I said that it possibly could be.

Q. Let me ask you if you answered that question this way, that it [the coffee] had been given to you by a source or someone from a trucking dock and that "I don't want to get anyone in a trick bag who just gives me something because we're friends. I don't know if the items were stolen or not and don't really care. I'm not going to tell you his name because I don't want to get him in trouble." Is that what you said?

The defendant answered:

Part of that is true, sir. I did say that it was given to me and I didn't, I think the officer there wanted to know the name of the gentleman and I wouldn't reveal it, and that was my reason.

Immediately thereafter, the prosecutor asked:

Isn't it a fact, Mr. Knight, that you had bought stolen items before?

There was an objection but the court overruled it since the defendant denied the allegation before the objection.

There was no evidence that the coffee was stolen or that the defendant possessed any stolen goods other than the three items listed in the indictment. It is obvious, however, that the government wanted the jury to believe that the defendant knowingly possessed stolen coffee.[1] *Cf. United States v. Clemons*, 503 F.2d 486 (8th Cir. 1974); *Gart v. United States*, 294 F. 66 (8th Cir. 1923).

Knight's indifference as to whether the coffee was stolen is not relevant to show knowledge and intent to possess other stolen property. For a defendant to be convicted under § 659, the prosecution must prove and the jury must find that the defendant had *actual knowledge* that the goods charged in the indictment were stolen. A defendant's alleged indifference as to whether other property was stolen has little probative value, especially when the government does not even show that the other property was stolen.

The possibility of prejudice from such evidence is great. When the testimony is considered along with the prosecutor's improper question suggesting that the government knew of regular dealings by the defendant in stolen goods [2] we find that a new trial is required.[3]

1. In closing argument, the prosecutor said:
   What about that coffee? How does the defendant answer the remarks he made to the officers . . . ? You heard the comments. He told them, I believe, you correct me in your minds if I'm wrong, that he got the coffee from a friend off of a trucking dock, that he refused to name the friend because he didn't want to get anybody in the trick bag. He said he didn't know if the items were stolen but he suspected that they were. What does this tell you? Does it show intent? Does it provide an opportunity? Were the defendant's acts consistent with the act of an innocent man?

2. This obviously was "a groundless question to waft an unwarranted innuendo into the jury box." *See Michelson v. United States*, 335 U.S.

469, 481, 69 S.Ct. 213, 221, 93 L.Ed. 168, 176 (1948).

3. The trial court properly instructed that the jury could infer knowledge that the goods were stolen from the defendant's possession of recently stolen goods. *See Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Wilson*, 523 F.2d 828 (8th Cir. 1975); *Teel v. United States*, 407 F.2d 604 (8th Cir. 1969); *Sewell v. United States*, 406 F.2d 1289 (8th Cir. 1969); *Anderson v. United States*, 406 F.2d 529 (8th Cir. 1969).
   Additionally, there was corroboration of defendant's guilty knowledge, *see Burke v. United States*, 388 F.2d 286 (8th Cir. 1968), in (1) the defendant's story that he bought the goods from a stranger in mid-June when in fact the TV set was not stolen from Riss Trucking until June 25, 1975; (2) the inability of anyone to

Although there was sufficient circumstantial evidence of knowledge to sustain the verdict, we find that the trial court erred in allowing the government to cast suspicion on the defendant as a dealer in stolen goods by references to his possession of other goods not shown to be stolen.

Judgment reversed and remanded for a new trial.

locate Sorrell, who supposedly sold the goods to defendant Knight; (3) the fact that the defendant had previously worked unloading Riss trucks; and (4) the impeachment of his denial of knowing Jim Guinn, the Riss truck driver who had hauled the merchandise in question.