**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Markus C. JOHNSON, Defendant-Appellant.**

No. 83–1533.

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1984.

Decided Aug. 17, 1984.

Certiorari Denied Dec. 3, 1984. See 105 S.Ct. 572.

Darwyn P. Fair, Deputy Federal Defender, Kenneth R. Sasse, Jill Leslie Price (argued), Detroit, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Patricia G. Reeves, Martha Ellen Dennis (argued), Asst. U.S. Attys., Detroit, Mich., plaintiff-appellee.

Before LIVELY, Chief Judge, ENGEL, Circuit Judge, and SWYGERT, Senior Circuit Judge.*

PER CURIAM.

Markus C. Johnson appeals his conviction, following a jury trial, of possession of stolen mail in violation of 18 U.S.C. § 1708 (1982).

Johnson was employed in the spring of 1982 as a mailhandler at the United States Postal Service's Bulk Mail Center in Allen Park, Michigan. On May 11, 1982, following an argument, Johnson allegedly brandished a gun at a co-worker, one Kemp. Kemp, who had observed Johnson put something into the trunk of his car, reported the incident to security police at the Bulk Mail Center. When questioned by security officers concerning the incident, Johnson denied threatening Kemp and denied having a gun. Afterwards, Johnson told his supervisor and postal inspectors conflicting stories as to whether he owned a gun and whether a gun was in the trunk of his car. After Johnson declined to open the trunk of his car for postal inspectors, assertedly because he had no key, the inspectors obtained a search warrant, forced open the trunk, and found a handgun wrapped in a shopping bag. Johnson denied owning the gun. The postal inspectors determined the registered owner of the gun and found that the gun had been mailed in an insured package to the manufacturer on April 24, 1981. The package was never delivered and the Postal Service eventually paid the owner's insurance claim. Investigation revealed that the package containing the gun would have passed through the Bulk Mail Center on a day when Johnson had worked.

Johnson was indicted by a federal grand jury and charged with assault with a deadly weapon in violation of 18 U.S.C. § 113(c) (1982), and with possession of stolen mail in violation of 18 U.S.C. § 1708 (1982). He was tried by a jury before Judge Ralph M. Freeman in the United States District Court for the Eastern District of Michigan. At the close of the government's case, Judge Freeman granted Johnson's motion for judgment of acquittal with respect to the assault charge, but denied the motion as to the possession of stolen mail charge. The jury convicted Johnson of the possession of stolen mail and this appeal ensued.

Johnson raises several issues before this court, only one of which merits discussion. Johnson contends that the evidence was insufficient to support a conviction for possession of stolen mail. He asserts that it was improper for Judge Freeman to instruct the jury that it could infer that Johnson knew the gun was stolen from his unexplained possession of the gun thirteen months after it was stolen.

The statute which Johnson was convicted of violating, 18 U.S.C. § 1708 (1982), forbids the possession of anything taken from

---

* Honorable Luther M. Swygert, Senior Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

the mail if the possessor knows that the article was "stolen, taken, embezzled, or abstracted."[1] It is this element of knowledge that Johnson contends was not supported by sufficient evidence to satisfy the standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). He argues that the only evidence that he knew the gun was stolen from the mail was his unexplained possession of the weapon thirteen months after its theft. Therefore, in Johnson's view, no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789.

It is apparent, however, that other evidence was adduced on the element of knowledge than Johnson's mere possession of the gun. There was circumstantial evidence establishing that Johnson was one of eight or nine postal employees who had the opportunity to steal the package containing the gun on April 25, 1981, or to observe someone else steal it. Perhaps even more persuasive were Johnson's conflicting statements regarding his possession of the gun. At various times Johnson related the following accounts concerning the gun:

1. On May 11, 1982, Johnson, when questioned by security officers, denied having a gun, and also denied that there was a gun in the trunk of his car.

2. On the same day, May 11, 1982, Johnson told his supervisor privately that he wouldn't open the trunk of his car because there was a gun inside.

3. Again, on May 11, 1982, Johnson told a postal inspector that he did own a gun, but that he did not have the gun in

his possession because he had lent it to a friend named MacIntyre.

4. Approximately two weeks later, Johnson told his supervisor that he had gotten the gun from a former co-worker at the Bulk Mail Center, one McIntosh.

5. Later on, in a taped conversation with Kemp (the threatened employee) Johnson said that he had a witness who would testify to having put the gun in Johnson's car. Johnson also offered to pay Kemp $500 if Kemp would alter his story about seeing Johnson with a gun.

■ Taken cumulatively, these inconsistent stories further corroborate the circumstantial evidence that Johnson knew the gun was stolen. The jury could have inferred that because Johnson admitted owning a gun, but did not want the authorities to find the particular gun that was in his car, he knew the gun was stolen. In addition, Johnson was one of a small number of persons at the Mail Center who could have observed, or participated in, the gun's theft and the gun was actually found in his possession. The evidence of course need not exclude every logical hypothesis other than guilt, but need only be sufficient for a reasonable trier of fact to find that the evidence established guilt beyond a reasonable doubt. *E.g., United States v. Cooper*, 577 F.2d 1079, 1085 (6th Cir.), *cert denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *United States v. Van Hee*, 531 F.2d 352, 358 (6th Cir.1976). In our view, there was sufficient evidence from which a reasonable trier of fact could conclude that Johnson had knowledge that the gun was stolen from the mail.

---

1. 18 U.S.C. § 1708 (1982) provides:
    Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or
    Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal

card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or
    *Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—*
    Shall be fined not more than $2,000 or imprisoned not more than five years, or both. (emphasis added).

Johnson also objects to the jury instructions given by Judge Freeman regarding the inference of knowledge that could be drawn from possession of recently stolen property. The jury was charged as follows:

Evidence that the Defendant was in actual or constructive possession of property which had been recently deposited in the mails in an envelope or container properly addressed and which was never received by the addressee, or anyone authorized to receive the property on his behalf, would ordinarily permit you to draw the inferences and find that the property had been stolen from the mails and that the Defendant knew it had been stolen unless the Defendant's possession is satisfactorily explained. I say that you may draw these inferences. You are not compelled to do so. You are the sole judges of the facts in this case.

The term "recently" is a relative term, and has no fixed meaning. The longer the period of time since the event, the more doubtful the inference of theft or knowledge or unexplained possession becomes.

If you should find beyond a reasonable doubt that the property in question was deposited in the mails in an envelope or container properly addressed, that it was never received by the addressee or anyone authorized to receive it on his behalf, that thereafter the Defendant was in active or constructive possession of the property, and that no satisfactory explanation of the Defendant's possession appears, you may find that the property was stolen from the mail and that the Defendant had knowledge that it was so stolen.

In considering whether possession has been satisfactorily explained, you are reminded that pursuant to his Constitutional rights, the accused need not take the witness stand and testify; there may be

opportunities to explain possession by other facts and circumstances independent of the testimony of the Defendant.

The appellant acknowledges that these instructions are similar to instructions that have been approved both by the Supreme Court and this court. *E.g., Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Brady,* 595 F.2d 359, 363 n. 3 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979); *United States v. Jennewein,* 590 F.2d 191 (6th Cir.1978). However, he contends that the facts fail to support the inference of knowledge, evidently because the gun was not found in Johnson's possession until thirteen months after it was stolen.

We need not determine whether it would be proper to instruct the jury regarding the inference of knowledge if the only evidence supporting such an inference was Johnson's possession of stolen mail thirteen months after the theft.[2] As has been noted above, there was other circumstantial evidence indicating the probity of the inference of knowledge. This court has stated with regard to the inference of knowledge arising from the possession of "recently" stolen property that "the term 'recently' is a relative term, depending on the circumstances of the particular case for its meaning. Although the inference of guilty knowledge that may flow from possession of [recently stolen property] grows weaker as the time of possession recedes from the time of theft, ... this likewise presents a matter for the jury under appropriate instructions." *United States v. Wolfenbarger,* 426 F.2d 992, 995 (6th Cir.1970).

The court's instructions in the present case were both appropriate, and commendably evenhanded. Judge Freeman cogently explained to the jury that the inference of guilty knowledge based on possession was merely a permissible inference which could, but need not, be drawn. He further instructed the jury that the inference be-

---

**2.** We note in passing that the instruction concerning the inference of knowledge has been approved by other circuits in cases where the period of time between theft and possession was greater than thirteen months. *United States v.* *Underwood,* 588 F.2d 1073, 1078 (5th Cir.1979) (nineteen months); *Altom v. United States,* 454 F.2d 289 (7th Cir.), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1765, 32 L.Ed.2d 116 (1972) (fifteen months).

comes more doubtful with the passage of time. Thus, while Judge Freeman apprised the jury of the potential probative value of the evidence, he dissipated any overemphasis the jury might have placed on it by explaining the problematical nature of the inference.[3] Under the circumstances of this case, the trial judge did not err in instructing the jury regarding the inference which may be drawn from the possession of recently stolen property.

AFFIRMED.

---

3. The instructions given by the trial judge in this case also comport with those contained in Devitt and Blackmar's treatise on jury instructions.

2 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 44.11 (3d Ed.1977).